My name is Christopher Renfro and I'm appearing for Sherwin Sterling. In this case, I believe that there's a very limited issue so I won't take a great deal of time. It's my understanding and I believe the law that I think the court should apply is the case United States v. Anderson and in that case the court, that was a Ninth Circuit case, held that the government failed to prove the lost profits as required. So this really gets to the heart of what my concern is. Is it your contention that the government should have had to prove what the profit was and that the amount of restitution should be limited to that amount? Christopher Renfro That is correct. The witness who testified, and I think we had some objections to the witness, didn't seem to have first-hand knowledge but indicated that the witness did not know how many sales were lost, did not know how much the manufacturing costs were, and I think that's the driving force here. When restitution is granted, it should not end up being a windfall for the companies. And even if I go to the ... Here's the problem for me. I think that there could be costs that are included in what the victims suffer here that they've incurred to which they would be entitled to some restitution without regard to profit. And so, for example, advertising costs, marketing costs, those kinds of things would be something that they would be entitled to be compensated for because it's built into that wholesale price. The problem I had, and this is why I wanted to really get to the heart of your argument, was it seemed to me that there are two components of costs that they did not incur with respect to these DVDs, arguably, and that is transportation costs and manufacturing costs because in fact, the transportation and manufacturing for these particular DVDs were actually incurred by your clients. But if your objection is that they should be just limited to profits, it doesn't seem to me that that's exactly right. You see where I'm coming from? Yes, and let me address that. I think that it was something that was an agreement that it cost $16.52 for every CD. From that $16.52, the advertising costs are taken into account when- It's not that that's the cost, but that's what the wholesale price would be. That is the wholesale price. So at that price, they have to take in all those costs. That's right. You're doing a strict ... I mean, if you're looking at it very practically, there are a lot of the embedded costs that are probably already compensated for by previous sales. And so if you look at it just from the practical perspective of the wholesaler, what they have lost is a sale. I think the district court spent a fair amount of time looking at all the testimony that was presented by the MPAA saying that these sales were being made through the same avenues of commerce. They had an issue of authenticity that they were being ... I think a lot of them were being sold on Amazon. And you and I, when we use Amazon, we look at cost, assuming that we're looking for the cheapest one. And what was displaced, I think you can make a fair argument. I think the district court found that people were buying it from you thinking that they were buying the genuine article, and that's a sale, and that's a wholesale price that the owners of the copyright didn't get. I understand the court's argument. I just wanted to point out, though, even in the case cited by the government, which is United States v. Milstein, if you look at that case, there's actually a footnote which says that ... and that's what's relied on, which is to say that they're entitled to the whole profit. But if you look at the footnote in that case, the footnote indicates that there should be a deduction for the cost, and the deduction should be made for those costs which are not factored in. But what happened in that case is that the defendant, when he appealed, did not raise that issue. It wasn't a blanket, we just take the profits and we don't subtract any loss amount from it. And if anything, if it's necessary to go back and establish the loss amounts, that's something we can do. However, in this case, it was raised at the time of the hearing that the cost, which come out of that $16.52, that those should be deducted so that a proper restitution amount could be made. Okay. Do you have any questions? Let's hear from Mr. Day. Thank you. Thank you, Mr. Renfrow. May it please the court, Judge Pryor. Orlando Comrie was a reseller of goods on the secondary market. For the companies to receive restitution, in this case for subsequent sales on the secondary market, they're going to be reaping a windfall. The companies can be compensated for a direct sale, that's DHGATE, but not subsequent sales, which is Mr. Comrie. And for subsequent sales thereafter, such as the people that bought the items from Mr. Comrie, if they then put them on Amazon and eBay and sold them, could the companies recoup restitution? No. And the reason for that is that Mr. Comrie is too attenuated. He is removed from the wholesaler and the distributor. As this court said in Robertson, there's a causal chain. And that causal chain cannot be attenuated. Mr. Comrie is attenuated. And nothing that Mr. Comrie did and sold caused any loss whatsoever, at least that the government proved at the restitution hearing. They didn't. That's not what the district court said. The district court, and I don't agree with you that he's a reseller in the secondary market. Somebody reselling in the secondary market is somebody who acquires goods that are authentic and then resells them for whatever reason. There's less demand and so they're selling it at a lower cost. Generally, that person pays less in wholesale in order for them to sell at retail at a lower amount. But what the district court, I think, did in this case is they tried to see whether or not there was displacement of a sale by those that own the copyright in the article. In that you're not a secondary market, you created your own market by creating something at far less cost with a greater potential for a profit margin. And when they bought your copies, they were not buying an authentic copy and that's what the value was to the MPAAP. Your Honor, you are correct that the district court went in that direction and analyzed it as lost sales. First, the district court went in the direction that it should have and that is lost profit based on diverted sales, based on the Anderson and the Fair case, but could not go in that direction because they were denied by the MPAA who would not divulge their costs and their profits because they don't want people to know how much profit they're making. So the court was left with no other alternative than to go in the direction of lost sales and there was no production of evidence at the restitution hearing that Orlando Comrie's sales on the secondary market diverted any sale away from Sony or Columbia or Paramount. There was no evidence that an individual went and bought Mr. Comrie's product that that person would have bought that product from Sony, Columbia, and Paramount. How are you supposed to figure that out? Call all those people to say if you had known that this, that, and... That's one way of doing it. That's what I suggested at the restitution hearing. There were 10,000 sales. They could have... Called all 10,000 people to figure out who... Call one, call 10, call 20. You know, what were you thinking? Well, I was going to go to Kmart and I was going to buy Criminal Minds, but I saw this advertised on the secondary market so I bought it that way. The government has the burden of proof here. It's a preponderance standard and this court has said that the preponderance standard is not a toothless standard. It has to be substantiated with specific and credible evidence. What was the specific and credible evidence that the government produced here? They didn't produce anything other than what you had said, Judge, and that is that the copies appeared to be authentic. But the government's argument there was that that was intended to fool the buyer into thinking they were getting it as to the origin. In other words, that they were actually getting these from Sony and Paramount and Columbia. Actually not the wholesaler. From the distributor. Kmart, Walmart, or Target. That is absolutely belied by how business is done on Amazon and eBay. When individuals go on Amazon and eBay and they look for a product, they'll get 10 or 12 different submissions for that product. In this particular case, Mr. Comrie, one of his websites was Charles and Charge. Nobody that's buying a Criminal Minds via Charles and Charge and getting it shipped from Mr. Comrie is thinking that they're getting it from Walmart or Target or Kmart. They're not. They can't believe that. They know that they're getting it on the secondary market. They know they're getting it from somebody like Orlando Comrie. Where he got it, they don't really care. They see a price, they buy it. That has not denied Sony or Paramount or Columbia one sale at all. And for them to be compensated in that fashion for that subsequent sale would reap a windfall. Because what happens with the people that buy from Comrie that then put it on eBay and Amazon? Maybe they got it in the mail. They don't open it up. They put it right back on Amazon and eBay, and they resell. Has that denied Sony and Kmart, excuse me, Sony and Columbia and Paramount a sale? It has not. And that's the point. Well, I don't know. My wife tells me I buy too much on Amazon. But there are lots of names of companies that are selling product on Amazon that have different sorts of names, but there's an imprimatur attached to those because they're being sold on Amazon. And you can go, I've had this long discussion with my clerk, to Camel, Camel, Camel and find that the fluctuation in price, even amongst the original producing manufacturer, fluctuates a lot during the course of a sales season. So because it has a funny name doesn't mean that somebody is saying, I'm going to buy this because it's $4 cheaper than it is from somebody who represents themselves to be Sony. And you are, in fact, displacing a sale when you have those indicia of authority and the imprimatur of using that sort of retail outlet. Respectfully, Judge, I disagree with you. I don't think that you're displacing a sale. I don't think that you can assume and presume that when somebody buys a DVD from Charles and Charge that they would have, that's a diverted sale away from Sony. I don't think, and the government has the burden of proof on that issue. The real question is whether the district court was entitled to find that it did divert the sale and whether that's clearly erroneous, isn't it? Well, yes, Your Honor. This court has said in Robertson that the determination of proximate cause, which is the restitution statute, is reviewed for clear error. However, the court said also in Simmons that in making clear error determinations, if there's no factual dispute, then the court reviews de novo for the application of the law to the facts. And I think that's what we have here. We have no real dispute of the facts. So I think it is de novo review. And I would say to the court that the district court employed the wrong legal standard, should have gone with lost profits based on diverted sales, because the courts have held that goods held by a merchant for resale . . . Let's say one of the buyers had come in and testified the way you had suggested a moment ago. Would it be a question of law then? I think it would still be a question of the law applied to the facts, because the judge would have to make a credibility . . . So you don't really think that would make a difference? No, I do think it would make a difference, because that would be some evidence credible. The judge would have to make the determination whether that's specific and credible evidence. Say it's credits, then? Yes, then that would be a factual determination that the court . . . Because the district court didn't have that testimony, but instead looked at how this transaction occurred and made the same kind of finding, it's a question of law? I think that the application, if there's no factual dispute, and if the individual came in and said, look, I was going to go to Kmart, but I bought Comrie's offering, and I don't think there would be a dispute as to that. I mean, I wouldn't have any evidence to dispute that, so it would still be an undisputed fact that I think would be reviewed de novo for the application of the law to those specific facts. And you think the answer would be what? The answer would be that in that scenario, that perhaps the government would have satisfied  For one sale? For this particular sale. Is that what you're saying? Would the district court have been entitled to say, well, that's representative of the buyers? The court could have at least listened to the investigator from the MPAA, did you call multiple people, did you try to do a survey, did you get any sense whatsoever? You're just saying that you heard one buyer? If there was just one, I think that the district court could have then made a determination that perhaps that was representative. I don't think that would have been representative, but at least this court would have had some evidence. But the court went in the wrong direction. It should have been lost profits based on diverted sales, because these are goods held by a merchant for sale, and that's what Anderson and Fair speak to. You've gone over, but it's been answered to my question, so you've saved her three minutes for rebuttal. Thank you. Ms. Mariani? May it please the court, Nicole Mariani on behalf of the United States, joining me at the podium, is a former U.S. attorney, Daniel Cervantes, who handled this case before the district court. The primary issue is whether the district court has used its considerable discretion in calculating the restitution owed to six victims, where the defendants sold counterfeit DVDs containing their intellectual property on reputable websites that were identical in appearance and price to the genuine DVDs. The government submits that there's no clear error in the district court's restitution calculation. Using the lost sales method provided a reasonable estimate of the victim's actual loss from multiple reasons. Does the preponderance of the evidence demonstrate . . . I wanted to follow up on Judge Pryor's thought earlier about . . . he said that there are two components of cost that were incurred by the defendants, and so you didn't incur that cost, the Motion Picture Association, and that's transportation and manufacturing. Do you . . . I mean, was there any evidence before the district court about what those costs were? There was not, Your Honor. Okay. I mean, do you agree or disagree with Judge Pryor? I mean, the MPAA did not incur transportation and manufacturing costs for these DVDs, did it? No, it did not, but remember, under the context that we're in, it only needs to be a reasonable estimate of the actual loss. And I don't think . . . How is it reasonable if it included costs that were not incurred by the MPAA? Because compared to the other costs, the primary costs, and there was testimony from MPAA Regional Director Casey, and I believe also from Investigator Fernandez during the restitution hearing, that the bulk of the costs borne by the six victims in producing these DVDs were in creating, maintaining, promoting, and advertising the intellectual property. The physical pressing of the DVDs and shipping was a relatively minimal cost compared to that. So you have the $16.32 wholesale price. It is largely comprised of the profit margin and of the costs expanded in building, creating, and promoting the underlying intellectual property, which is really the heart of what the victims do. And . . . Yeah, my problem with this has been that I've been worried about this issue that Judge Martin is raising again. But part of my problem is second-guessing the district court about something that maybe really wasn't the objection. And when I look at the transcript and I look at the briefs, it seems that the defendants are really making a different argument that what the limitation on restitution should be to lost profits, which seems to me to be wrong. It does seem to me, though, that there should be some deduction for manufacturing and transportation costs, but I'm not really sure that that objection was made and it's something that we ought to fault the district court about at this stage. That's what I've been troubled about. No, you're correct, Judge Pryor. This is sort of coming up for the first time here, and that's why really in looking on how to respond to that, I would direct the court to the fact that we are on an abusive discretion standard, and whether did the district court clearly err in using all the available evidence before. And also, one thing I wanted to point out is what is a little bit unique about this We have six victims who are all direct competitors, indeed they are the six major movie studios in the world and really comprise the bulk of the entertainment industry, and they felt that they could not reveal their individual cost breakdowns and profit margins without worrying about running afoul of antitrust legislation or publicly revealing really valuable business secrets to the public and also to their direct competitors. Thus, we don't know the lost net profits or the specific cost breakdown for manufacturing. Well, I'm persuaded that this is not about profit, because there are costs that you would, that the manufacturer would capture that are, you know, in addition to profit, that would particular DVDs had been manufactured by them or not, the marketing costs, for example. All kinds, there are all kinds of costs, right, that would go into the equation. But anyway, I just don't see it as so much a lost profits argument, and that seems to be what the defendants are arguing. And the problem too is that if we sent this back to the district court to really evaluate something that had not really been the objection and not really been litigated, I don't know how you'd go and figure that out, and what's that amount going to be, like a couple pennies? Yes. I mean, a couple pennies per DVD, that's... A very minimal piece of it. Yeah. It could be... So you're willing to make that evidentiary offer now for the first time, that it would be a couple pennies? I mean, I'm just sort of saying, common sense-wise, we've all gone to Staples and bought a stack of DVDs. We know how much, you know, the actual physical DVD is not compared to the cost of a... There was no evidence of that for the district court. No, there was not. There was not. That was just a common sense note. Well, other than there was testimony that the cost was minimal, how it is... Yes. The testimony was that the bulk of the cost was in the creation, maintenance, and production and protection of the intellectual property. Right.  So I think given such unavailability of that information, the question is, did the district court clearly err in finding that the wholesale price of the genuine DVD provided a reasonable estimate of the actual loss, which is all the Mandatory Victims Restitution Act asks for, is a reasonable estimate, given the available information. We believe the government acted, or sorry, the district court acted within its inconsiderable discretion in so doing. The wholesale price the victims receive for every genuine DVD is what they receive for every genuine DVD that is introduced into the stream of commerce, and as we noted, nearly all of the victims' costs are sort of producing, creating, maintaining this intellectual property. While that wholesale value of the genuine good may not be the only reasonable estimate of actual loss in a counterfeit sales, in a sale of counterfeit goods case, it is still a reasonable estimate of loss that certainly does not constitute a clear error in this case. I wanted to point out, and we sort of, let's see, I don't think it creates a windfall, because as we noted, it's a really minimal part of the cost, and we're really just looking to try and achieve fairness to the victim. Indeed, the MVRA fails to define value. The failure to define value gives the courts flexibility to determine the measure of value appropriate for the facts of each case in a manner that could best provide a fair outcome to the victim in that case. As this court noted in United States v. Futrell, there will be inevitable gaps in the evidence regarding the value of the victim's property, which is why the restitution amount only need to be a reasonable estimate of the loss. Here— There's one thing to have gaps, and it's another thing to have somebody who's seeking damages come into court and say, it's a secret how I arrive at this number that I'm asking you to give me. Don't you— Oh, I agree. Yes. It is different, and all we can look to now is to see whether the district court clearly erred in deciding that where that evidence was unavailable and was not before, if it could still make a reasonable loss estimate on the evidence before, and if it could still find that the wholesale price was close enough and was reasonable and would provide fairness to the victims without giving them an undue windfall. So you're not asking us to issue an opinion that says, you know, we're going to go for the retail price in these situations where restitutions are— No. No. As opposed to lost profits. No, I think the— You're just saying on these facts. Correct. And I think that's— A clear error. Yeah. In the restitution context, and in particular in the way that the Mandatory Victims Restitution Act is written, it's a really unique analysis done by the district court in every case, and that's part of why, as I mentioned before, the act does not define value. It opted not to because it gives the court's flexibility to look at every unique case and the facts of each case and the evidence that's available, and decide how to best bring fairness to the victims, giving any gaps or uncertainties in the record. And here, I don't think the district court clearly erred in finding that wholesale value, given all the available evidence, and the particular facts here where you have six victims who comprise the vast majority of a very powerful industry and do have legitimate—both business seeker, and they also were concerned about violating antitrust legislation and coming forth and sharing all of their individual costs and negotiations and profit breakdowns. That given all of those facts, in this circumstance, the district court did not clearly err in finding that the $16.32 wholesale price was a fair and reasonable value of the actual loss suffered—I mean, unless you have any questions about it—for the diverted sales of the 10,000 and 25 DVDs that were identical in appearance and identical in price and sold on Amazon. The only thing I want to weigh, and maybe they won't ask me to do this, but I have a bit of an editorial comment that follows on what Judge Martin said, which is, having had a counterfeit DVD case myself that we tried, the government has an obligation also not to just accept that somebody says that their information is proprietary and confidential and has antitrust implications. The government's obligation is to do a robust analysis in trying to prove what the actual loss is, and at least in my case, and I think even in this case, that the government needs  Of course, Your Honor. But at the end of the day, we can only work with what the victims are willing to give us, and we presented that to the district court, and what we believe was a reasonable argument. I think at this point, the district court considered it, and we don't think that they clearly erred in adopting it. But of course, the evidence could always be better. Well, and we're limited, too, by what the objections actually are. Correct. Yes, Your Honor. Had they had this been flushed out, they're going to get more done. That's a critical component of what I'm dealing with here. Correct. If the court has no further questions, the government will rest on their briefs. All right. We ask that you affirm the restitution order. Thank you. Thank you. Thank you, Ms. Mariani. Mr. Day? With my three minutes, I'm going to attempt to persuade all three of you that, in fact, there is no loss here whatsoever. I'm not going to address. I'll adopt the computation argument as much as it was preserved. But my belief, my firm belief, is that the court ordered restitution here for companies that suffered no loss. There was nothing, and the court's language is, but for the actions of the defendant, there would not have suffered a loss. And that was not the scenario in which what was testified to at the restitution hearing. That's the language from Robertson. And the court went with diverted sales. There was no evidence of a diverted sale. The court merely relied, and Judge Duffy spoke about the fact that they appeared to be genuine, and they were sold at a commensurate price. Keep in mind that when the people are buying these on Amazon, they're not seeing the actual product. They're actually only seeing the price. So really, price is the only thing that the district court really could have reliably relied upon. But that, in and of itself, does not show a diverted sale. This is about, really though, a loss of value of intellectual property. And I just don't, it's hard for me to get over the notion that your clients were free-riding, right, on what the motion picture companies had done, right? I understand completely what the court is saying. So no recourse for these companies. They do have a recourse, D.H. Gate. D.H. Gate is the company that pirated this particular intellectual property. They're the ones that are responsible. I'm not saying that they are not, but not Mr. Comrie. And if the court thinks about the cases, Milstein, Anderson, Robertson, Fair, all of those defendants were assessed restitution, and they directly pirated that intellectual property, not Mr. Comrie. In Robertson, they bought directly from Novell Products. In Fair, they pirated Adobe software. In Anderson, they pirated Adobe software. Mr. Comrie didn't do that. D.H. Gate did that. So there is a recourse for restitution. It's a proximate causation argument. That's correct, but it cannot be attenuated. As the court said in Robertson, the attenuation... That's proximate causation. Proximate causation, and the court interpreted that by also saying that there cannot be an attenuation as far as the chain is concerned. Mr. Comrie is removed from the distributor. He has no contact with the distributor. That's D.H. Gate. He has contact with D.H. Gate. He is too removed. He's a reseller on a secondary market. He's no more responsible than lost profits than the people would be who actually bought Comrie's products. Are they liable for restitution to the MPAA companies? No, because they're sellers, they're buyers on the secondary market. If they put those products right back on eBay and Amazon, they are not depriving a single sale of Sony. If the court upholds the restitution order here, it would be a windfall for billion-dollar companies who did not suffer a loss. Thank you, Mr. Day. We have your case. We know that you were court-appointed, and we appreciate you... Oh, actually, you're with FPD, aren't you? Well, we appreciate your public service.